UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CASE NO.: 5:08CR379-01 |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge John R. Adams |
| ) | |
| JAIME RUVALCABA, ) | **ORDER AND DECISION** |
| ) | (referencing Doc. 80) |
| Defendant. ) | |
| ) | |

Pending before this Court is a motion filed by Defendant, Jaime Ruvalcaba, pursuant to 18 U.S.C. § 3582(c) for a reduction in his sentence under the Fair Sentencing Act of 2010, Pub.L. No. 111–220, 124 Stat 2372 (2010) ("FSA") and Amendment 782 to the United States Sentencing Guidelines ("Amendment 782") (eff. Nov. 1, 2014). Amendment 782 made retroactive changes to the Sentencing Guideline's drug quantity base offense levels by a reduction of two levels. *See* U.S. Sentencing Guidelines Manual, App. C. The Government has not filed a brief opposing the motion; however, for the reasons stated herein, the motion is DENIED.

    **I.**    **FACTS AND PROCEDURAL HISTORY**

According to the Presentence Investigation Report, from January 2008 to August 28, 2008, the Defendant supplied or assisted in the supply of approximately 613.8 grams of cocaine to a co-conspirator, which cocaine was intended for distribution in Akron, Ohio. The Defendant's conduct involved transactions with undercover law enforcement agents as part of a sting operation. Among numerous other transactions, on May 7, 2008, the Defendant and a co-conspirator sold half

1


a kilogram of cocaine for $13,000 to two undercover agents. Then on June 16, 2008, the Defendant negotiated and agreed to sell one kilogram of cocaine to undercover agents for $25,000. The Defendant received the money for the drugs from the agents and then stole the kilogram of cocaine and fled.

On June 16, 2008, the Defendant was in possession of $6,894 in U.S. currency, of which $6,500 was from the $25,000 paid by the undercover agents for the purchase of the kilogram of cocaine. Throughout the conspiracy, the Defendant involved at least three other people, including the mother of two of his children.

On January 27, 2009, the Defendant plead guilty to one count of conspiracy to possess with intent to distribute cocaine pursuant to 21 U.S. §§846 and 841(b)(1)(B). With an enhancement as a career offender and a later reduction for acceptance of responsibility, this Court then sentenced him to a mandatory-minimum term of 188 months, to be followed by a term of four years of supervised release. This sentence was within the guideline range of 188 to 235 months of incarceration, at a total offense level of 31 and a Criminal History Category designation of VI.

The Defendant now moves this Court for an additional two-level decrease as a result of the 2014 amended sentencing guidelines.

## II. LAW AND ANALYSIS

### A. Legal Standard

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States,* 130 S.Ct. 2683, 560 U.S. 817, 819 (2010) (*citing* 18 U.S.C. §3582(c)). However, "Congress has provided an exception to that rule 'in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has

subsequently been lowered by the Sentencing Commission.'" *Id.* In those circumstances, the statute authorizes a court to reduce the term of imprisonment "…if such a reduction is consistent with…" applicable Commission policy statements. U.S. Sentencing Commission, Guidelines Manual §1B1.10(b)(2) (Nov. 2009) (USSG)). "The relevant policy statement, USSG § 1B1.10, instructs courts proceeding under §3582(c)(2) to substitute the amended Guidelines range while 'leav[ing] all other guidelines application decisions unaffected.'" *Id.* (*quoting* §1B1.10(b)(1)).

Looking at §3582(c)(2), "a court may then grant a reduction within the amended Guidelines range if it determines that one is warranted 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Id.* Thus, the statute establishes a two-step inquiry that must be followed: 1) a court must determine that a reduction is consistent with §1B1.10; and 2) the court must then consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in §3553(a). *Id.* at 826.

At step one, the statute requires the court to follow the Commission's instructions in §1B1.10 to determine the prisoner's eligibility for sentence modification and the extent of the reduction authorized. *Id.* at 827. Specifically, the court must begin by "…determin[ing] the amended guideline range that would have been applicable to the defendant…" had the relevant amendment been in effect at the time of the initial sentencing. *Id.* (*quoting* 18 U.S.C. §3582(c)(2)). Courts generally may not reduce the defendant's term of imprisonment to a term that is less than the minimum of the amended guideline range produced by the substitution. § 1B1.10(b)(2)(A). If the sentencing court originally imposed a term of imprisonment below the Guidelines range, only then is the court authorized to impose a term "comparably" below the amended range. *Dillon*, 560 U.S. at 827.

At the second step of the inquiry, the court must then consider any applicable factors set forth in §3553(a) and "determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id*. (emphasis added). Section 3553(a) provides that a "court shall impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and it enumerates several factors a court "shall consider" in determining an appropriate sentence, including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. §3553(a)(1); *see also Dillon*, 560 U.S. at FN2.

With the direction outlined by the Supreme Court and subsequent Sixth Circuit decisions, this Court strictly follows *Dillon*'s two-step analysis and reviews each motion on a case-by-case basis. Even when the Government does not oppose a motion, "…a district court has the discretion to deny a section 3582(c)(2) motion, even if the retroactive amendment has lowered the guideline range." *U.S. v. Ursery*, 109 F.3d 1129, 1137 (6th Cir. 1997). Armed with its responsibility to consider the facts of each case in light of §3553(a), when a motion for reduced sentence is filed, this Court reviews all information available, including the presentence report and behavioral reports from the Bureau of Prisons discussing the Defendant's conduct while incarcerated.[1] 18 U.S.C. §3661 (no limitation shall be placed on information a court may receive and consider for

---

[1] Some motions for reduced sentence have portions of the behavioral reports attached as exhibits; however, consistent with its duty to thoroughly review each case, this Court requests a copy of the report directly from the Bureau of Prisons through the Probation and Pretrial Services Department. This Court must then wait for the report to be received in order to properly evaluate each Defendant's motion under the mandates of 18 U.S.C. §3582(c)(2) and *Dillon v. United States,* 130 S.Ct. 2683, 560 U.S. 817, 819 (2010).

purpose of imposing an appropriate sentence). After reviewing the relevant materials in this case and considering §3553(a), the Court finds as follows:

### B. The Defendant's Motion for Sentence Reduction

Under the first step of the analysis, the Defendant would otherwise be eligible for a sentence reduction under §1B1.10. Under the 2014 amendment to the Sentencing Guidelines, the Defendant would be eligible for a reduced sentencing guideline range of 151 to 188 months, as reflected by a total offense level 29 and a Criminal History Category designation of VI. Given the amount of time remaining on his current sentence, the Defendant seeks a reduced sentence. However, after reviewing the nature and circumstances of the offense in light of the Defendant's criminal history and after considering the statutory factors set forth in 18 U.S.C. §3553(a), a reduction is inappropriate at this time.

The Defendant has a significant criminal history, including two "drive-by" shootings, which have resulted in his designation as a career offender within the meaning of U.S.S.G. §4B1.1. Examining his criminal history, in September of 1995, the Defendant admitted guilt resulting in a finding of delinquency for possession of a stolen automobile. Then, in 1997, he was arrested for driving under the influence after a warrant was issued for his failure to appear in court. Three years later, the Defendant was found guilty of domestic violence, with a subsequent conviction for driving under the influence.

Most troubling to the Court is the Defendant's repeated convictions for violent felonies involving the discharge of a firearm. In 2002, the Defendant was convicted for discharging a firearm at or into a habitation or school and possession of marijuana. In this incident, the Defendant and a co-defendant perpetrated a "drive-by" shooting where they discharged a Bryco

Arms .380 handgun into an occupied home in Akron. They were in possession of more than 200, but 1, 000 grams or less, of marijuana. He was sentenced to two years of incarceration.

While on post-release control, the Defendant again blindly shot into an occupied house in a "drive-by" shooting. And once again, he was charged with improperly discharging a firearm at or into a habitation or school with a firearm specification. During this time, his parole officer confirmed that the Defendant's adjustment to post release control was poor.

Consistent with the Defendant's ongoing refusal to comply with the law, while the Defendant was on post release control for his second "drive-by" shooting, the Defendant was engaged in the extensive narcotics scheme at issue. Through wire taps, law enforcement recorded the Defendant threating to shoot the undercover agents involved in the sting operation. He orchestrated the supply and sale of tens of thousands of dollars of cocaine into the Akron community and involved three other people into his drug scheme. It should be noted that the Defendant's criminal history started at age 16 and has continued unabated until his federal sentence.

Despite his significant criminal history, the Defendant contends that he is a good candidate for a sentence reduction because of his success during incarceration. As noted above, this is a proper consideration for the Court to review. During his incarceration, the Defendant has completed a drug abuse education course and numerous other educational and rehabilitative courses.

The Defendant's conduct during his period of incarceration, however, cannot outweigh the danger he poses to the public. The Court has considered the nature and circumstances of the offense, along with the Defendant's criminal history and finds that that the Defendant remains a

high risk offender based on his history of firearms possession and violence, his willingness to blindly shoot into Akron area houses, and his inability or unwillingness to cease his criminal behavior.

As such, considering the nature and circumstances of the offense and the Defendant's history and characteristics, continued incarceration is necessary to protect the public and afford adequate deterrence to further criminal conduct. 18 U.S.C. §3553(a). The Court's current sentence of 188 months appropriately reflects the seriousness of the offense, promotes respect for the law and provides just punishment for the offense in light of Amendment 782. *Id*. Furthermore, the current sentence of 188 months is still within the amended guideline range.

### III. CONCLUSION

Given this, after consideration of the statutory factors set forth in 18 U.S.C. §3553(a), a sentence reduction is inappropriate at this time. The Defendant's motion is hereby <u>DENIED</u>.

IT IS SO ORDERED.

<u>January 12, 2016</u>      */s/ John R. Adams*
Date      Judge John R. Adams
     United States District Court